THOMPSON, J.
 

 This is an action to recover 120 acres of land located in Caddo parish.
 

 The defendants are the widow and heirs of Milton Washington, and are in the actual possession of the land claimed.
 

 The plaintiff claims the land under an unbroken chain of title going back to Washington, who acquired the land by mesne conveyances from the United States government.
 

 As the entire chain of title by which the land passed from Washington to the plaintiff is attacked on the ground of simulation, it is well to make special note of the several transfers as written, and as they appear upon the conveyance records of the parish where the land is located.
 

 The first transfer to be noted is that of Milton Washington to the Louisiana Beal Estate & Development Company, of date January 3, 1913. This deed was by authentic act, and was filed and recorded the day followingi its date. The consideration recited in this deed was $500, represented by a note executed by the purchaser to its own order and due three years after date.
 

 On November 22, 1913, the Beal Estate Company sold the land to Felix WeiUer. This sale was by authentic act, recorded on the day it was passed, and recited a consideration of $570.35 paid in cash.
 

 On January 15, 1920, WeiUer sold the land to Miss Lizzie Hollingsworth. This was also an authentic act, was recorded the day it was passed, and recited a consideration of $1,068.-27 paid in cash.
 

 On April 30, 1925, Miss Lizzie Hollingsworth sold the land to H. 6. Burkhalter, by authentic act which was recorded on the 5th day thereafter. This deed recited a consideration of $1,620.44, paid in cash.
 

 On May 5, 1927,, Burkhalter executed a mortgage on said land to secure the payment of a note for $3,000, payable to his own order and due one year after date.
 

 On October 4, 1927, the plaintiff herein, as owner and holder of the note of Burkhalter, obtained executory process on said note for a balance due of $1,000.
 

 The property was sold by the sheriff after due advertisement, and was adjudicated to the plaintiff herein. A formal deed, conveying
 
 *661
 
 the property to the plaintiff, was executed by the sheriff on February 19, 1927.
 

 It appears that a community of acquéts and gains existed between Felix Weiller and his wife at the time he acquired the property, but which was dissolved by the death of the wife before he sold to Miss Hollingsworth. Mrs. Weiller left one heir, Mrs. Eunice Feist, wife of Sam Feist, who was recognized by judgment of the court February 10, 1922, and sent into possession of the estate of her deceased mother.
 

 On July 6, 1927, Mrs. Feist (née Weiller) executed by authentic act a quitclaim deed in favor of the plaintiff, in order to perfect the title conveyed to Miss Hollingsworth. In that deed it is recited that the consideration was the amount previously paid to her father by Miss Hollingsworth.
 

 From the foregoing chain of sequent and successive transfers it is perfectly o'bvious that the plaintiff has an unimpeachable title to the land in question.
 

 There is nothing appearing on the face of any of the deeds forming the chain of title which in any manner ^affects the good faith of the purchasers.
 

 The deeds are all valid in form, translative of property, and recite an acknowledged consideration.
 

 If there were any secret or latent equities or' defects in the transfers from Washington to the ■ Real Estate Company, such equities or defects could not affect the subsequent purchasers, who acquired on the faith of the public records which disclosed a perfectly valid title in their respective vendors.
 

 It may be said, however, that the testimony does not show any latent defects in the sale by Washington to the Real Estate Company, and there is not a word of testimony to show that the consideration recited and acknowledged in said sale was not in fact paid. Nor was there any effort made to sustain the allegation of simulation either by written or oral testimony.
 

 Neither is there a line of testimony, nor a single circumstance, to impugn the good faith of the Real Estate Company, who was the immediate vendee of Washington, nor of any of the subsequent purchasers.
 

 It appears that Washington remained in possession of the land until his death on November 5, 1926, and thereafter his wife and children continued in possession.
 

 We are asked to apply the presumption, which flows from the fact of retention of possession by Washington and
 
 his widow and
 
 heirs, against all of the successive transferees, and on that presumption alone to declare all of said transfers, from Washington down to and including the sale to the plaintiff, simulated and without effect.
 

 Civil Code, art. 2480, declares that, in all cases where the thing sold remains in the possession of the seller because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons the parties must produce proof that they are acting in good faith and establish the reality of the sale.
 

 This court has had occasion frequently to consider this article of the' Code, and as between creditors and a purchaser from their debtor have uniformly held that retention of possession by the debtor is a badge of simulation sufficient to throw the onus probandi on the purchaser from the debtor of proving the reality of the sale.
 

 We have not been able to find, however, a single case where this rule has been applied in favor of forced heirs against a purchaser at a judicial sale and in
 
 good
 
 faith, as far removed from the immediate purchaser from the parent as the plaintiff is in this case.
 

 It is to be observed that no bad faith is alleged against any of the purchasers of the property, except Burkhalter, who acquired from Miss Hollingsworth. Under the law,
 
 *663
 
 therefore, each and every one of the other purchasers is presumed to be in good faith.
 

 It must also be observed that all of the sales (including the act of mortgage of Burk-halter) were executed and placed upon the public records during the life of Washington, and yet he never at any time questioned the validity and genuineness of any of these sales.
 

 In these circumstances, we are of the opinion that the presumption flowing from the retention of possession by the vendor should yield to the presumption of good faith on the part of the purchasers, coupled with the great length of time between the sale by Washington and the purchase by plaintiff, during all of which time the several sales remained upon the public record unchallenged.
 

 Aside from these facts, however, the defendants have waived their charge of simulation against the sale of Washington to the Real Estate Company, and of that company to Felix Weiller, and have unqualifiedly admitted that the two sales referred to were not simulations, but operated a transfer out of Washington.
 

 In paragraph 13 of defendant’s answer it is specifically alleged that the purchase by Miss Hollingsworth from Felix Weiller was for the use and benefit of Milton Washington.
 

 It is impossible to reconcile the admission involved in this paragraph with the charge that the property had never passed under the deed made by Washington, for, if that deed was a simulation and a sham, it was doing a vain and useless thing for Miss Hollingsworth to have paid $1,068 for the recovery of property for the benefit of Washington, if he had never parted with the ownership thereof.
 

 On September 22, 1922, more than two years after the purchase of the land by Miss Hollingsworth from Felix Weiller, she issued and signed a receipt to the following effect:
 

 “Reed, of Milton Washington four hundred and no/100 dollars as payment on redemption of place bought for him from Felix Weiller in the year 1920.”
 

 It is argued by counsel that this receipt should be given the effect of a counter letter, showing the purchase of the property by Miss Hollingsworth for Milton Washington, and was good as such against future purchasers.
 

 We do not so regard the receipt. There is nothing on the face of the receipt to show that the land here involved was the land referred to in the receipt, nor could it be accepited as proof of the fact that the land was bought by Bliss Hollingsworth for the benefit of Washington, subject to redemption by him.
 

 The authentic act negatives any such purpose and intention, and besides more than
 
 2Yz
 
 years after the date of said receipt Miss Hollingsworth sold the land.
 

 The most that can be said of the document is that it evidenced a payment by Washington on some land on which he had a right of redemption, and, if it could be identified with the land here involved, it shows very clearly on its face it was only a partial payment, and was less than half of what Bliss Hollingsworth paid out on the land.
 

 There is no proof whatever that the privilege of making further payments on the land was reserved to Washington, nor that any further payments were in fact made.
 

 In these circumstances, we are authorized to assume that all rights of Washington to redeem the property from Bliss Hollingsworth, if, as a matter of fact, he ever had any such privilege, were lost before she transferred the property to Burkhalter.
 

 A purchaser from one who holds under a deed specially reserving the right of redemption, at a time long after the period of redemption has expired, is not bound to institute an investigation beyond what appears on the records, to ascertain if the property has or has not been redeemed.
 

 
 *665
 
 He lias the right to rely on the representations of his vendor and upon the face of the deed, which shows that the term of redemption has expired and no redemption has taken place.
 

 The plaintiff here occupies a more favorable position. The deed to Miss Hollingsworth was a plain cash deed. There was nothing on its face to suggest that the property was bought for Washington, or that he had any right of redemption. The receipt for an alleged payment on some land recorded long after Miss Hollingsworth’s purchase furnished no proof of such a fact, and cannot be regarded as notice affecting the good faith or validity of subsequent purchasers.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, O. J., takes no part.