91 So.2d 394 (1956)
Fannie Foster JACKSON et al., Plaintiffs-Appellants,
v.
Tom J. GOLSON et al., Defendants-Appellees.
No. 8567.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1956.
Rehearing Denied January 11, 1957.
Writ of Certiorari Denied February 25, 1957.
*395 Trousdale & Oliver, Monroe, James T. Jeter, Shreveport, for appellants.
Pipes & Pipes, Monroe, Tucker, Bronson & Martin, Shreveport, Sholars, Gunby & Guthrie, Monroe, for appellees.
AYRES, Judge.
This action was brought by plaintiffs to have a deed containing a provision *396 conferring upon the vendor the right or privilege of redemption declared to be a mortgage given as security for debt and that accordingly plaintiffs be decreed the owners of the property mortgaged. The matter is now on appeal from a judgment sustaining exceptions of no cause and of no right of action and a plea of prescription of ten years acquirendi causa, the trial of which was submitted to the court on the allegations of plaintiffs' original and supplemental petitions. The exceptions and pleas having been so submitted for determination, the allegations of the aforesaid petitions are assumed to be a true statement of the facts for the trial of said exceptions and plea and for the purpose of the review of the ruling thereon on this appeal.
The plaintiffs are the surviving widow and children of Everett Jackson, who, on October 31, 1917, purchased a certain tract of land comprising 120 acres, more or less, situated in Ouachita Parish, Louisiana, for a consideration of $700 cash. Under date of March 30, 1925, Everett Jackson executed an instrument to and in favor of D. P. Golson, which purports to be a deed covering said property, with the right of redemption. This instrument, recorded December 28, 1925, and reciting a cash consideration of $431.17, contains this provision:
"It is agreed and understood by and between the parties hereto that the vendee herein hereby extends to the vendor herein the right of redemption of the property hereinabove described at any time from the date hereof until the first day of January, A.D. 1926, he the said vendee hereby obligating himself to reconvey the above described property to the vendor within that time on the payment by the vendor to him of the purchase price as herein expressed together with the price of this transfer whatever taxes he the said vendee may pay out on the above described property and any other expenses incident and necessary for the maintenance of the property hereinabove described together with interest on the aggregate of the above purchase price, taxes, costs and charges at the rate of eight per cent per annum from date of payment until finally paid."
The defendants are the heirs of D. P. Golson and of his wife, Mrs. Lizzie V. Golson, who are alleged to be in unlawful possession of said property; the Atlantic Refining Company, which is alleged to unlawfully claim rights upon said property as a lessee in oil, gas and mineral leases, and 14 named individuals who are alleged to be unlawfully asserting claims to overriding royalty or mineral interests through leases and/or royalty or minerals deeds granted and executed by the Golson heirs.
Following his purchase of said property Jackson cleared and fenced a substantial portion thereof, constructed a residence and outbuildings thereon and maintained the family home there for many years. It is alleged, incidentally, that in March 1925, Jackson had become mentally afflicted and, in fact, was insane; that his affliction was well known to those who knew him, and that by order of court of May 3, 1930, he was committed to the Central Louisiana State Hospital for the Insane at Pineville, Louisiana, where he died February 22, 1931.
It is further alleged that, following Jackson's death, his minor children were taken from the family home to live with a married sister, and that thereafter D. P. Golson or his heirs took possession of the property and, notwithstanding amicable demands, refused to return it to the surviving widow and children.
Presented as the sole question for review on this appeal is the correctness vel non of the judgment sustaining the aforesaid exceptions. The defendants have neither appealed nor answered the appeal and the other pleas of prescription of 10 days, 30 days, one year, four years and 30 days and of laches and estoppel are not now before the court for determination. The trial court, however, observed that the prescriptions plead in bar of plaintiffs' rights allegedly *397 asserted because of the alleged insanity of Everett Jackson were well founded. In passing, however, we may state that, from our understanding and appreciation of the character of plaintiffs' action, their claims are not based upon any claim of Jackson's insanity and that, therefore, the pleas of prescription referred to are inapposite, as well as the plea of four years' prescription, as this is not an action for rescission of a sale for lesion beyond moiety, as is the plea of prescription of 30 years, because defendants are not alleged or shown to have had possession for that requisite period of time.
Appellants complain and point out that the trial court committed the following specific errors:
(1) In holding that the subject simulated `deed with right of redemption", which the parties intended to be a mortgage, was an act translative of title to the property;
(2) In maintaining a plea of prescription of 10 years acquirendi causa where the subject instrument was not translative of title and the defendants later took and continued in possession in bad faith;
(3) In holding that a fraudulent simulation is prescribable where the vendee remains in possession of the property;
(4) In holding, in effect, that a mortgagee under a simulated "deed with right of redemption" may by his own act take possession of the security and thereby acquire a just title in good faith; and
(5) In construing plaintiffs' action to be one to declare the instrument in question an absolute nullity because of the insanity of Everett Jackson.
Pertinent and material to the issues presented are the allegations of plaintiffs' original and supplemental petitions, which, in substance, allege:
(1) That the instrument upon which this action is predicated was intended to be a mortgage by the parties thereto;
(2) That the consideration was wholly inadequate, the property being worth at least $2,000 and the consideration being only $431.17; and
(3) That the borrower, Everett Jackson, remained in full and complete possession of the property for a number of years following the passage of the act; that possession was never delivered to defendants but, on the contrary, the defendants, in bad faith, took possession of the property following Jackson's death in 1931.
The nature of the controversy between plaintiffs and defendants is as was stated by the Supreme Court in Latiolais v. Breaux, 154 La. 1006, 98 So. 620, wherein the court, in referring to the action therein instituted, said:
"This is an action to have an alleged sale of land with right of redemption (vente a remere) declared a mere pignorative contract (common-law mortgage); the difference being this, that in sales with right of redemption the purchaser becomes the owner of the property sold, subject only to the right of the vendor to reacquire the property ([LSA-]C.C. 2567, 2575 to 2578), whilst in pignorative contracts the nominal vendor continues to be owner and the nominal purchaser has only a pledge or mortgage for his debt, which he must enforce in the usual way."
It is conceded that a deed with the right of redemption, where the consideration was adequate and possession was delivered, is translative of title to the property involved. It is the rule, however, that a simulated deed with the right of redemption, that is, when the consideration was wholly inadequate to support a conveyance and the borrower remained in possession, amounts to no more than a conventional mortgage and does not translate title of the property to the lender. This principle was recognized in Howe v. Powell, 40 La.Ann. 307, 309, 310, 4 So. 450, 451, wherein the court stated:

*398 "Hence it is that, when the price is inadequate and possession has not been delivered to the purchaser, but was retained by the vendor, it has uniformly been considered and held that the transaction was not a sale, but a mere security, indeed, a sort of pignorative contract, upon which the law looks with suspicion, for the protection of the embarrassed and unfortunate debtor against the rapacity of his ravenous creditor.
"Indeed, the settled doctrine of this court on this subject is that `redeemable sales,' unaccompanied by delivery of the thing sold, of which the considerations are inadequate, will be treated by courts, without sufficient evidence to the contrary, as contracts, for which the thing nominally sold stands as security and nothing else. Le Blanc v. Bouchereau, 16 La.Ann. 11; Collins v. Pellerin, 5 La.Ann. 99; Miller v. Shotwell, 38 La.Ann. [890,] 891; See Ware v. Morris, 23 La.Ann. 665; Stewart v. Buard, Id., 201; also Merlin, Vo. Pignoratif Contract, 284; Troplong, Vente No. 695, p. 191; 3 Baudry Lacantinarie, No. 1045, p. 606; 28 Laurent, No. 544, p. 531."
In Crozier v. Ragan, 38 La.Ann. 154, which concerned the conveyance by the plaintiff to the defendant of a plantation wherein the consideration was recited as being $9,050 and the property was alleged to be valued at $20,000, and where plaintiff remained in possession of the plantation after the sale, managed it, and exercised the same rights of ownership after as before the sale, the court concluded:
"It is manifest that the conveyance was intended and understood by both parties to be a security for an existing and an anticipated indebtedness. The use of a form of sale to accomplish that object has not been infrequent, and in Parmer v. Mangham, 31 Ann. 348, where a number of decisions on such cases are grouped, it was held that such conveyance does not vest the ownership of the property in the creditor."
This principle was followed by this court in Bechard v. St. Romain (Morgan, intervener), 35 So.2d 606.
In Collins v. Pellerin, 5 La.Ann. 99, it was emphasized that a contract of sale in which there is a stipulation that the vendor may redeem the property by returning the price within a certain time, where the vendor remains in possession of the property and the price is inadequate, will be regarded not as a sale with the equity of redemption but merely as a security for the return of the money paid to the vendee, unless sufficient evidence to the contrary be produced. This rule has been cited in these cases: Andrew v. Bradley, 10 La.Ann. 606; Hughes v. Klingender, 14 La.Ann. 845, 847; LeBlanc v. Bouchereau, 16 La.Ann. 11, 12; H. Ware & Son v. Morris, 23 La.Ann. 665, 669; Parmer v. Mangham, 31 La.Ann. 348, 355; Thibodaux v. Anderson, 34 La.Ann. 797, 804; Miller v. Shotwell, 38 La.Ann. 890, 893; Howe v. Powell, 40 La.Ann. 307, 310, 4 So. 450; Baker v. Smith, 44 La.Ann. 925, 929, 11 So. 585; Davis v. Kendall, 50 La.Ann. 1121, 1125, 24 So. 264; Marbury v. Colbert, 105 La. 467 (Nat. Rep. System Ed.) middle page 259, 29 So. 871; Franklin v. Sewall, 110 La. 292, 295, 34 So. 448; Leger v. Leger, 118 La. 322, 327, 42 So. 951, 953; Rester v. Powell, 120 La. 406, 427, 45 So. 372, 379. See also Wolf v. Wolf, 12 La.Ann. 529; Gleises v. McHatton, 14 La. Ann. 560.
In Marbury v. Colbert, supra, [105 La. 467, 29 So. 872] it was held:
"Where a sale is made with the equity of redemption stipulated for, and the vendor continues in possession of the property as owner during the whole period allowed for the redemption, such a transaction will be regarded, on its face, not as a real sale, but as a contract of security."
A contract of security may be in the form of a sale. Ford v. Parsons, 142 *399 La. 1093, 1094, 78 So. 128, 129; Lerner Shops of Louisiana, Inc., v. Reeves, La. App., 73 So.2d 490. In the latter case the distinction between an instrument constituting a sale of land with a right of redemption and a pignorative contract was pointed out. In sales with the right of redemption the purchaser becomes the owner of the property sold subject only to the right of the vendor to reacquire the property. LSA-C.C. arts. 2567, 2575-2578. In pignorative contracts the nominal vendor continues to be the owner and the nominal purchaser has only a pledge or mortgage for his debt, which he must enforce in the usual way. Latiolais v. Breaux, supra.
Applying the above principles of law to the alleged facts of this case, the conclusion is inescapable that the purported sale from Jackson to Golson was a pignorative contract or conventional mortgage given as security for debt, which did not vest title to the property in the lender, Golson, unless it be that the possession thereof allegedly acquired by Golson and/or his heirs forcibly and in bad faith can have the effect of changing the act of security into a deed translative of title. Plaintiffs' position that it does not have such effect finds support in Baron v. Phelan, 4 Mart.O.S. 88, wherein it was held that a bill of sale with a right of redemption, which was actually a mortgage, gave the mortgagee no right to take possession of the property by his own act.
Under a similar instrument involving real estate, it was stated in Crutchfield v. Moch, 148 La. 201, 206, 86 So. 744, 745:
"It is clear, however, according to authorities above cited, that Marx Moch was merely a mortgagee, and had acquired no right to take possession under a vente á réméré of March 3, 1892 which, for 18 years, he had construed as a mortgage; * * *."
Next for specific consideration is defendants' plea of 10 years' acquisitive prescription. This plea is founded upon LSA-C.C. art. 3478, which provides:
"Art. 3478. He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * *".
Plaintiffs' allegations, if true, establish that defendants' title is not just; that the consideration passed was not one-fourth the value of the property; that the act was intended to be and in reality was a mortgage whereby Jackson secured an indebtedness to Golson, and that such was the intent of Golson himself. That contention, if established, would negative defendants' position that Golson acquired by a just title.
Pertinent here is LSA-C.C. art. 3452, which reads:
"Art. 3452. The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective."
From plaintiffs' petition, no other conclusion could be reached other than that Golson knew that his "title" was vicious and defective. His heirs are in no better position. For instance, it was held in Kernan v. Baham, 45 La.Ann. 799, 13 So. 155, 159, that the prescription of 10 years requires good faith as its basis and the owner sufficiently shows bad faith in proving that the present possessors held the property as heirs and widow in community of another who was not himself in legal good faith. The widow claiming community rights is not a third person quoad the community. The court therein stated:
"The extent of the rights of the deceased and of the community regulates those of the heirs and of the widow in community, who succeed to all his rights, and those of the community, but they are transmitted with all their defects, as well as all their advantages, the change in the proprietor producing no alteration in the nature of the title or possession."
*400 Specifically, LSA-C.C. art. 3484 specifies that the term "just title" refers to such a title sufficient to transfer the ownership of the property, and Art. 3485 provides:
"Art. 3485. And in this case, by the phrase transfer the ownership of the property, we understand not such a title, as shall have really transferred the ownership of the property, but a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners, such as a sale, exchange, legacy or donation.
"Thus, prescription could not be acquired under a title resulting from a lease or loan, because these contracts do not transfer the ownership of the property."
Additionally, the instrument, or "deed with right of redemption", involved herein is alleged to have been a simulation, and simulations as between the parties are not prescribable. Guilbeau v. Thibodeau, 30 La. Ann. 1099; Spivey v. Wilson, 31 La.Ann. 653; Schalaida v. Gonzales, 174 La. 907, 142 So. 123.
Defendants cite the cases of Latiolais v. Breaux, supra; Foster v. Carnes, 177 La. 99, 147 So. 697, and Akard v. Hutton, 196 La. 758, 200 So. 137, in support of the contention that the delivery of possession of the property to Golson transformed the mortgage into a deed translative of title. In those cases the vendors under proper deeds, with right of redemption, remained in possession of the property following the passage of the acts, but thereafter, upon default in payment of the redemptive prices, voluntarily delivered possession of the property to the vendees. Specifically, in the Foster-Carnes case [177 La. 99, 147 So. 698], the court stated that "thereupon, and without protest, Foster delivered possession to Ardoin." These cases hold that voluntary delivery perfected the deeds with right of redemption and thereby made the deeds translative of title and not merely pignorative contracts or conventional mortgages.
In the instant case, the facts are distinguishable. It is alleged that Golson or his heirs forcibly, in bad faith and over the protest of Jackson's widow, took possession of the property from the widow and minor heirs some six years following the passage of the act, which act was allegedly intended to be and actually was a mortgage. It would appear that the "delivery" of possession of property necessarily comprehends a free and voluntary act. It would be difficult indeed to understand that possession of the subject property was delivered by Jackson's heirs under the allegations set forth in plaintiffs' petitions. The alleged simulated title and bad faith possession of defendants can not constitute the basis of a plea of prescription of 10 years' acquirendi causa.
There is, however, no showing of just title and good faith in the record to support defendants' plea of 10 years' acquisitive prescription. As stated hereinabove, the pleas were submitted on the basis of plaintiffs' allegations, the correctness of which could only be established by evidence properly adduced upon trial. Such a trial may be had by referring this plea to the merits, otherwise defendants would be foreclosed on the issue without an opportunity of being heard.
Defendants in brief further rely upon a prescription of 10 years as provided in LSA-C.C. art. 2221, which, in part, provides:
"In all cases, in which the action of nullity or of rescission of an agreement, is not limited to the shorter period by (a) particular law, that action may be brought within 10 years."
This provision of the Code has no application here for the reason that plaintiffs do not seek to nullify the contract in question. They seek merely to have it declared a *401 mortgage or security for debt, which was allegedly the intent and purpose of the parties thereto. It is their contention that it should have been enforced in the usual way by a hypothecary action. This position finds support in Latiolais v. Breaux, supra; Marbury v. Colbert, supra, and Reed v. McGinty, 1 La.App. 325. Defendants could have pursued and enforced their rights in the aforesaid deed with right of redemption according to law and in a manner pointed out by these decisions, which procedure is well established in the jurisprudence of this State.
As to the exception of no cause of action, it is noted in Crutchfield v. Moch, supra, similar allegations as made by plaintiffs herein were held to state a cause of action. The syllabus prepared by the court stated:
"A petition in a suit for the recovery of real estate discloses a cause of action when it alleges that the petitioners inherited the property from the former owner (their mother and grandmother); that defendants claim title under a so-called vente á réméré, executed by her some 18 years prior to her death, during which period, and long after the recited delay for redemption had expired, she remained in actual possession of the property, which instrument on its face indicates that it was intended to witness a pignorative contract, and which property was acquired shortly afterwards, from the tax purchaser, by the wife of the grantee in said contract, but that no possession was taken or claimed thereunder until after the death of the grantor, some 18 years later."
The exception of no right of action is without any basis whatever. Therefore, as to the Golson heirs, the petition discloses a right and a cause of action.
However, the Atlantic Refining Company and the 14 other defendants who claim rights by virtue of oil, gas and mineral leases and/or royalty sales or mineral deeds, stand in a different position from that of the parties to the original contract and their heirs, for these additional parties are third parties, who presumably acquired on the faith of the public records in the absence of an averment of bad faith and they have the right, therefore, to interpret the "deed with right of redemption" according to its precise terms. In this connection, LSA-R.S. 9:2721, 9:2722 provide:
"§ 2721.
"No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties."
"§ 2722.
"Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee, grantee or vendee of servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property."
In Beard v. Nunn, 172 La. 155, 133 So. 429, 430, the court stated:
"In Latiolais v. Breaux, 154 La. 1006, 1008, 98 So. 620, we recognized that, even when the sale was made with *402 right of redemption, the right to treat as a pignorative contract instead of what it purported on its face to be, to wit, a vente a remere, was confined to the parties to the contract. In the long line of cases there mentioned there is not one in which a party was permitted to show this to the prejudice of third persons.
"We there said that the leading case on that subject was Marbury v. Colbert, 105 La. 467, 29 So. 871. * * * it would be subversive of all the fundamental rules of property to hold that third persons taking deeds at their face value should be subject to secret equities between their own vendor and prior owners of the land. * * * In other words, there would be no security whatsoever for purchasers of real estate, if they were not entitled to rely upon the title deeds to such property, as being exactly what they purport to be."
Neither is a purchaser from one who holds under a deed specifically reserving the right of redemption at a time long after the period of redemption has expired, bound to institute an investigation beyond what appears on the records to ascertain if the property has or has not been redeemed. Coleman v. Washington, 167 La. 658, 120 So. 42; Jolivet v. Chaves, 125 La. 923, 52 So. 99, 32 L.R.A.,N.S., 1046; Tonglet v. Chopin, 155 La. 752, 99 So. 587.
The jurisprudence of this State is well settled that third persons dealing with immovable property need only to look to the public records. Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321; Coyle v. Allen, 168 La. 504, 122 So. 596; McDuffie v. Walker, 125 La. 152, 51 So. 100; Caskey v. Standard Oil Co. of Louisiana, Inc., 181 La. 479, 159 So. 722; Beard v. Nunn, supra; LSA-C.C. art. 2266.
It is also the well settled jurisprudence of this State that third persons dealing with immovable property not only have the right to depend upon the faith of the record title thereof but are not bound by any secret equities that may exist between their own vendor and prior owners of the land. Chachere v. Superior Oil Co., supra, and the authorities therein cited.
Therefore, the exception of no cause of action urged by the Atlantic Refining Company and the 14 other defendants who acquired rights upon the faith of the public records was properly sustained.
For the reasons herein assigned, the judgment sustaining the plea of 10 years' prescription acquirendi causa is reversed and set aside and said plea is referred to the merits. As to the defendants, Golsons, the exceptions of no cause and of no right of action are overruled, but as to the defendant, Atlantic Refining Company, and the 14 others asserting rights under oil, gas and mineral leases or royalty sales or mineral deeds emanating from the Golson defendants, the exceptions of no cause and of no right of action are sustained, and this cause is hereby remanded to the Honorable the Fourth Judicial District Court in and for Ouachita Parish, Louisiana, for further proceedings in accordance with law and consistent with the views herein expressed.
The costs of appeal are hereby assessed against Tom J. Golson et al., the heirs of D. P. Golson and Mrs. Lizzie V. Golson, deceased, appellees; all other costs are to await the final determination of this cause.
Plea of prescription referred to the merits; exception of no cause and of no right of action sustained in part and overruled in part, and cause remanded.